UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MAKETA S. JOLLY,

                             Plaintiff,

v.                                                                    1:21-CV-621
                                                                            (DNH/TWD)

EXCELSIOR COLLEGE, MARY LEE POLLARD,
LAURA BALDWIN JUFFA, JOANNE LEONE,
PHILLIS MITCHELL, JOHN HERMINA,

                             Defendants.
_____

APPEARANCES:

MAKETA S. JOLLY
Plaintiff, *pro se*
42 Kingston Terrace
Aston, Pennsylvania 19014

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT RECOMMENDATION

On May 31, 2021, Maketa S. Jolly ("Plaintiff") filed a complaint against Excelsior College in the United States District Court for the Eastern District of New York. (Dkt. No. 1.) The Honorable Pamela K. Chen, United States District Judge, transferred the entire action to this District. (Dkt. No. 2.) Thereafter, Plaintiff filed an amended complaint and an application to proceed *in forma pauperis*. (Dkt. No. 5 (the amended complaint); Dkt. No. 7 (the "IFP Application").) The amended complaint asserts claims against Excelsior College and added claims against Mary Lee Pollard ("Pollard"), Laura Baldwin Juffa ("Juffa"), Joanne Leone ("Leone"), Phillis Mitchell ("Mitchell"), and John Hermina ("Hermina") (collectively "Defendants") in their individual capacities. (Dkt. No. 5.)

With respect to her IFP Application, a court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). After reviewing Plaintiff's IFP Application (Dkt. No. 7), the Court finds Plaintiff meets this standard. Therefore, her IFP Application is granted.

Where, as here, a Plaintiff's IFP Application is granted, 28 U.S.C. § 1915(e) directs that "the court shall dismiss the case at any time if [it] determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).[1]

---

[1] A *pro se* litigant's pleadings are held to a less strict standard than attorney drafted pleadings. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, *pro se* litigants are held to a lesser pleading standard than other parties."). Where, as in this case, a plaintiff is proceeding *pro se*, the court construes his pleadings "to raise the strongest arguments that they suggest." *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (internal quotation marks omitted). However, this "does not exempt a [*pro se* litigant] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

Turning to Plaintiff's amended complaint, she generally asserts that Pollard, who was the "Dean of Nursing" at Excelsior College, transmitted false information about her academic record to state boards of nursing in 2018. (Dkt. No. 5 at 3.) Specifically, Plaintiff claims Excelsior College—through Pollard—violated its stated privacy policies and disseminated a "Cease and Desist" letter regarding Plaintiff's academic achievements. *Id*. at 18. The impact of Excelsior's actions, according to Plaintiff, denied her access to become a nurse in Vermont and resulted in disciplinary action against her in New Jersey.

She asserts that Leone, who is allegedly the Executive Director of the New Jersey Nursing Board, worked in concert with Excelsior College and illegally disseminated information regarding Plaintiff's nursing credentials. *Id*. at 4-5. Plaintiff alleges Leone assisted Excelsior College in defending against Plaintiff's claims in various court proceedings. *Id*. Moreover, she contends Leone was the architect of the New Jersey Board of Nursing's decision to initiate discipline against her. *Id*. To that end, Plaintiff claims Leone determined that her New Jersey Registered Nurse ("RN") license was awarded in error and that she was only eligible for an "LPN" license. *Id*. at 4. Thereafter, on May 14, 2020, New Jersey initiated disciplinary procedures against Plaintiff to remove her RN license. *Id*. at 9. Plaintiff claims that, because she was not a New Jersey resident, New Jersey did not have jurisdiction to revoke her RN license. *Id*. at 5, 10.

With respect to Mitchell, Plaintiff claims she works for the Vermont Board of Nursing and improperly denied Plaintiff an opportunity to take the RN licensure examination. *Id*. at 14-15. Plaintiff asserts that Mitchell acted outside her authority and contrary to Vermont regulatory guidance and—like Leone—assisted Excelsior College in its litigation efforts against Plaintiff. *Id*. at 17.

In addition to the individuals who work for Excelsior College and the various state boards of nursing, Plaintiff sued two attorneys: Juffa and Hermina.  Regarding Juffa, Plaintiff asserts she represented Excelsior College in litigation in 2014 and 2018, "against allegations made by former minority students who alleged misrepresentation, fraud, and violations of New York General Business Laws 349 and 350." *Id*. at 11.  Although it is not entirely clear, Plaintiff asserts that Juffa denied her rights associated with the First Amendment "through misleading documents and misrepresentations of facts" during the course of representing Excelsior College in litigation.  *Id*. at 13.  With respect to Hermina, from what the Court can glean, he was class-counsel for several actions against Excelsior College regarding its treatment of minority students.  *Id*. at 18-19.  According to Plaintiff, he never represented her, and she is now suffering from the legal impact of "general releases" allegedly "procured through fraudulent conduct that cited Plaintiff in an incorrect legal proceeding *Shawanda et. al. v. Excelsior College* 1:2017 cv 06263."  *Id*. at 19 (italics added).

In several places in her amended complaint, Plaintiff acknowledges this is not her first time asserting these claims in federal court.  Indeed, on the first page of the amended complaint, Plaintiff acknowledges this action was "[p]reviously filed in the Eastern District of Pennsylvania and New York[.]"  *Id*. at 1.  Moreover, in reference to her previous case, Plaintiff asserts that United States District Judge David N. Hurd "scribed misleading and inappropriate remarks" and his previous judicial rendering was "biased" in adjudicating these very claims in a previous action.  *Id*. at 19.  That action was filed against Excelsior College, the State of Vermont Board of Nursing, and the State of New Jersey Board of Nursing, on May 21, 2019, in the Eastern District of Pennsylvania and subsequently transferred to this District Court thereafter.  *Jolly v. Excelsior Coll.*, No. 1:19-CV-1317, 2020 WL 3128535, at *3 (N.D.N.Y. June 12, 2020) ("*Jolly I*"),

*reconsideration denied*, No. 1:19-CV-1317, 2020 WL 3606374 (N.D.N.Y. July 2, 2020) ("*Jolly (reconsideration)*") *appeal dismissed as frivolous*, Order, No. 20-2162 (2d Cir. Mar. 11, 2021), ECF No. 163.  In *Jolly I*, the Court granted Excelsior College's motion to dismiss on June 12, 2020.[2]  In that case, the Court carefully considered Plaintiff's allegations that "Excelsior conspired with the Vermont and Jersey boards to smear her reputation and prevent her from becoming an RN because she is an African American woman."  *Jolly I*, 2020 WL 3128535, at *4.  Nevertheless, the Court found that none of her allegations supported a plausible legal claim and dismissed the complaint with prejudice.

It is apparent from the face of the amended complaint in this action that Plaintiff is attempting to re-litigate a putatively new set of claims from the exact same set of facts that formed the basis for her previous action.  Given this conclusion, the Court must recommend finding that the amended complaint is barred by the doctrine of *res judicata*.

"Under the doctrine of *res judicata*, once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning the transaction, or series of connected transactions, out of which the [first] action arose."  *See Cieszkowska v. Gray Line New York*, 295 F.3d 204, 205 (2d Cir. 2002) (quoting *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997)) (internal quotation marks omitted) (alterations in original); *accord Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000).  In other words, later actions will be *res judicata* and subject to dismissal if

---

[2]  The Court read Plaintiff's complaint to assert seven claims: (1) disclosure of personal information; (2) violation of 18 U.S.C. § 242 ("§ 242"); (3) conspiracy under 42 U.S.C. § 1985 ("§ 1985"); (4) discrimination under 42 U.S.C. § 2000e ("Title VII"); (5) Excelsior's violation of attorney-client privilege; (6) another Title VII claim; and (7) a defamation claim.  *Jolly I*, 2020 WL 3128535, at *3.  In its decision on Plaintiff's motion for reconsideration, the Court even considered whether she could have plausibly alleged a 42 U.S.C. § 1983 claim against Pollard in her individual capacity.  *See Jolly (reconsideration)*, 2020 WL 3606374, at *2.

"(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001) (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284–85 (2d Cir. 2000)) (internal quotation marks omitted) (alterations in original).

Given that *Jolly I* ended with dismissal on the merits, the same actors were involved,[3] and the claims that form the basis for this complaint were or *could have been* brought in the previous case, the doctrine of *res judicata* squarely bars this action. *See Lopez v. Jet Blue Airways*, No. 12-CV-0057, 2012 WL 213831, at *2 (E.D.N.Y. Jan. 24, 2012). To be sure, there are some differences in the two actions—most notably that she is suing Pollard, Leone, and Mitchell in their individual capacity—however, that difference does not alter the Court's conclusion. Critically, Plaintiff *could have* raised all the relevant facts and claims against those individuals in her action in 2019. Thus, the Court concludes that the amended complaint is nothing more than a re-dressing of the same facts in a new complaint—originally in a different court—to circumvent the previous dismissal. Accordingly, the Court recommends dismissing the amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Ordinarily, a *pro se* complaint should not be dismissed without leave to amend. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (other citation omitted). However, where, as here, better

---

[3] The Court notes that Hermina and Juffa were not named in the previous complaint or implicated in the merits of Plaintiff's claims. Indeed, Juffa was counsel of record for Excelsior College in *Jolly I*. However, the Court is at a loss for what—if any—claims Plaintiff asserts against these putative Defendants. The Court finds that Plaintiff's allegations against those Defendants are frivolous and recommends dismissing those individuals pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

pleading could not cure the substantive defects in the complaint, repleading would be futile and should not be permitted. Therefore, the Court recommends dismissing the amended complaint without leave to amend.

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 7) is **GRANTED**, and it is further

**RECOMMENDED** that Plaintiff's amended complaint (Dkt. No. 5) be **DISMISSED WITHOUT LEAVE TO AMEND**; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff, along with a copy of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[4] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: October 12, 2021
Syracuse, New York

*/s/ Thérèse Wiley Dancks*
Thérèse Wiley Dancks
United States Magistrate Judge

---

[4] If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

2020 WL 3128535
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Maketa S. JOLLY, Plaintiff
v.
EXCELSIOR COLLEGE, Defendant.

1:19-CV-1317
|
Signed 06/12/2020

**Attorneys and Law Firms**

MAKETA S. JOLLY, Plaintiff pro se, 42 Kingston Terrace, Aston, Pennsylvania 19014.

OF COUNSEL: LAURA B. JUFFA, ESQ., KAUFMAN BORGEEST & RYAN, LLP, Attorneys for defendant, 120 Broadway 14th Floor, New York, New York 10271.

**MEMORANDUM–DECISION and ORDER**

DAVID N. HURD, United States District Judge

**I. INTRODUCTION AND BACKGROUND**

**\*1** Plaintiff Maketa S. Jolly ("Jolly" or "plaintiff") is an African American woman and a Licensed Practical Nurse ("LPN"). At some point during the mid-to-late 2000s, she began to consider progressing her career and looked into becoming a Registered Nurse ("RN"). Dkt. 2 ("Comp."), pp. 25, 115.[1] In 2009, plaintiff stumbled across Excelsior College ("Excelsior" or "defendant"), an online college that offered a program that, upon graduation, would qualify its students to sit for an examination to become RNs. *See id.*

Jolly enrolled in Excelsior's nursing program in 2009, but was ultimately dismissed without graduating on March 1, 2014 after failing a required course for the third time. Comp. 115. For her part, however, plaintiff asserts that there was a technical error in her third test and she should have been permitted to take the test a fourth time. *Id.*

Nevertheless, on March 5, 2018, absent both a degree from Excelsior and any directive as to whether she would be permitted to take the failed course again, Jolly applied to sit for the NCLEX-RN examination—apparently the required test to become an RN—in Vermont. Comp. 25, 115. As part of the test application, plaintiff was asked to enter the date she graduated from a program that would make her qualified to work as an RN. *Id.* at 25-26. Plaintiff alleges that she was attempting to apply for the examination through an alternate qualification process, and never intended to state that she had graduated from defendant's program, but Vermont's system still required her to list her graduation date. *Id.*

On March 7, 2018, Jolly received an email from Vermont's Licensing Administrator, Michelle Lavoie ("Lavoie") informing plaintiff that she had received plaintiff's college transcripts, but that her application remained incomplete. Comp. 26. After several volleys of communication back and forth, Lavoie ultimately told plaintiff that her paperwork could not be accepted and that she would need a verification of education form from Excelsior. *See* Comp. 95-99.

On July 31, 2018, an unnamed party allegedly informed New Jersey's Board of Nursing ("the Jersey board") that Jolly had attempted to receive an RN license in Vermont by misrepresenting that she had an associate degree from Excelsior's RN program. Comp. at 102. On August 15, 2018, defendant allegedly confirmed to the Jersey Board that plaintiff had attended Excelsior's nursing program but had received no degree. *Id.* at 102-03. The Jersey Board brought a disciplinary action against plaintiff, and she ultimately waived her right to a hearing and accepted a five-year - suspension of her LPN license in New Jersey on December 6, 2018.[2] *Id.* at 104.

**\*2** In February of 2019, Jolly alleges that New Jersey's Lieutenant Governor's office sent her an email containing the Jersey board's formal decision and punishment. Comp. 28. Plaintiff does not know whether it was Vermont's Board of Nursing ("the Vermont board") or Excelsior who informed the Jersey board that she did not have the requisite degree to become an RN. *Id.* at 28-29. In any event, plaintiff alleges that defendant had reached out to several states' nursing boards to proactively inform them that plaintiff was misrepresenting herself as a graduate. *Id.* at 113.

On May 21, 2019, Jolly filed the present complaint in the Eastern District of Pennsylvania against Excelsior, the Jersey board, and the Vermont board. Dkt. 2. On May 24, 2019, United States Magistrate Judge Joel H. Slomsky transferred the case to the Northern District of New York but dismissed plaintiff's claims against the state boards with prejudice for lack of subject matter jurisdiction. Dkt. 5. On May 11, 2020, defendant moved to dismiss plaintiff's complaint under

Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim. That motion, having been fully briefed, will now be decided on the parties' submissions without oral argument.

## II. LEGAL STANDARD

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.' " Ginsburg v. City of Ithaca, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Instead, the complaint must contain sufficient factual matter that it presents a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In assessing the plausibility of the plaintiff's complaint, "the complaint is to be construed liberally, and all reasonable inferences must be drawn in the plaintiff's favor." Ginsburg, 839 F. Supp. 2d at 540. Especially, a *pro se* plaintiff must have her submissions scrutinized with "special solicitude," and they "must be ... interpreted to raise the strongest arguments that they suggest." Triestman v. BOP, 470 F.3d 471, 474–75 (2d Cir. 2006) (cleaned up).

The complaint may be supported by "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." L7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (citing Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004)).

## III. DISCUSSION

As an initial matter, Excelsior argues that Jolly's claims are barred by a settlement agreement she entered with defendant in 2019. Defendant argues that in that agreement, plaintiff ceded all claims against it accruing before the date of the release on March 26, 2019. For her part, plaintiff argues that the release should not be extended to these unrelated claims.

It may be that Excelsior is correct, and the release broadly ceded all of Jolly's rights to sue. But that question cannot be answered on a motion to dismiss, not when the release itself is not available for review. To be sure, defendant has cited to pages and paragraphs from the document, but those are of little use when the Court cannot access the actual document. After all, in citing to the release, defendant referred the Court to a docket entry in the Eastern District of New York. Though this means of citation is not a problem in a vacuum, in this particular case the docket entry containing the settlement agreement is sealed, and cannot be accessed through any available means other than requesting the District Court of the Eastern District of New York to unseal it.

**\*3** As it stands, there are two different interpretations of the settlement release, and neither can be verified. By extension, it would be improper to take judicial notice of the effects of a release based purely on Excelsior's word when Jolly's interpretation—as a *pro se* plaintiff—stands opposite to it, especially in the context of a Rule 12 motion. Accordingly, the release cannot dispose of plaintiff's claims at this juncture, and review of defendant's motion must pass on to the adequacy of the complaint.[3]

Jolly's complaint can be read to assert seven claims: (I) disclosure of personal information; (II) violation of 18 U.S.C. § 242 ("§ 242"); (III) conspiracy under 42 U.S.C. § 1985 ("§ 1985"); (IV) discrimination under 42 U.S.C. § 2000e ("Title VII"); (V) Excelsior's violation of attorney-client privilege; (VI) another Title VII claim; and (VII) a defamation claim, which defendant correctly notes lies hidden in the "Analysis" section of the complaint, but which must nevertheless be considered in light of plaintiff's *pro se* status.

Jolly's Count I claim for disclosure of personal information lists several potential statutory and regulatory bases, spanning federal and state law. First, plaintiff references 32 C.F.R. § 505.7 ("§ 505.7"). This regulation forms part of the Army Privacy Act Program, which regulates the disclosure of personal information stored in the Army's system of records to other agencies and third parties. Thundathil v. Lynch, 2016 WL 5485123, at \*7 (W.D. Okla. Sept. 29, 2016). Because plaintiff does not allege at any point in her complaint that the records defendant apparently disclosed were stored in an Army database, plaintiff cannot rely on § 505.7 to support her claim.

Second, Jolly refers to Vermont's Public Records, Privacy, and Electronic Access Handbook ("the Handbook"). Much as the name suggests, the Handbook plaintiff refers to is simply a reference guide to Vermont's policies regarding the listed topics, among them the privacy of public records. There is therefore similarly no authority stemming from the Handbook to support a viable action against Excelsior. Moreover, the

allegations rooted in the Handbook are aimed exclusively at former defendant the Vermont board, without reference to the only remaining defendant. Thus, the Handbook cannot support plaintiff's claim.

Third, Jolly relies on Vermont's Public Records Law, 1 V.S.A. §§ 315-20. Her reliance is, once again, misplaced. The only portion of that statute which even arguably creates an individual right of the sort plaintiff alleges is 1 V.S.A. § 317a(b), which states that "[a] custodian of public records shall not destroy, give away, sell, discard, or damage any record or records in his or her charge[.]" Even assuming, but of course not deciding, that this language afforded plaintiff an actionable right, she could not assert that right against Excelsior, who can hardly be said to be a custodian of public records under the authority of Vermont's state legislature.

 *4  Fourth and finally, Jolly refers in her complaint to the Privacy Act of 1974 ("the Privacy Act"), 5 U.S.C. § 552a. Even that argument is unavailing, however, because the Second Circuit has firmly held that the Privacy Act affords no such private right of action against anyone other than a federal agency. *Pennyfeather v. Tessler*, 431 F.3d 54, 56 (2d Cir. 2005). Accordingly, plaintiff has not provided any viable basis for a claim of disclosure of personal information, and that claim must be dismissed. Moreover, even giving due consideration to plaintiff's *pro se* status, no amount of amending can fix a claim with no substantive basis in law. Accordingly, permitting plaintiff to amend would be futile, and plaintiff's Count I disclosure of personal information claim must be dismissed with prejudice. See *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Count II alleges that Excelsior violated § 242. The problem with that allegation, however, is that § 242 is a federal criminal statute, which also does not provide plaintiff a private cause of action. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994). Accordingly, Jolly's Count II claim for violation of § 242 must also be dismissed, and because the lack of any private cause of action would render amending that claim futile, that dismissal must be with prejudice.

Count III of Jolly's complaint alleges that Excelsior participated in a conspiracy to deprive her of her constitutional rights in violation of § 1985. A conspiracy claim under § 1985 requires a plaintiff to allege four elements: (1) a conspiracy; (2) aimed at directly or indirectly depriving a person or class of persons of "the equal protection of the laws, or of equal privileges and immunities under the laws"; (3) an act in furtherance of that conspiracy; and (4) a resulting injury to person or property, or else the deprivation of a right or privilege of a United States citizen. *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015). The plaintiff must also plausibly allege that the conspiracy is "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus...." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007).

Jolly alleges that Excelsior conspired with the Vermont and Jersey boards to smear her reputation and prevent her from becoming an RN because she is an African American woman. However, plaintiff's attempts to plausibly allege a racial or otherwise invidious component to defendant's conduct fall well short of sufficiency. Plaintiff makes three allegations touching on race: (1) she is an African American woman; (2) the Vermont board's Program Manager for Nursing Assistants, rather than a program manager for a full nursing program, called plaintiff on the phone to discuss her concerns with the NCLEX-RN examination; and (3) defendant's describing plaintiff as ineligible to sit for the NCLEX-RN examination. Comp. at 25, 50, 55.

Jolly essentially argues that the Vermont board had the wrong department call her because it assumed that an African American woman would not be a nurse, but would instead be a nurse's assistant. Similarly, plaintiff's being labelled ineligible to sit for the NCLEX-RN examination is, she argues, a prejudicial denial of the opportunity for education and advancement for African Americans. The road block that plaintiff runs into, however, is that there is an utter absence of any factual basis to tie race to either action.

Jolly may genuinely believe that her receiving a call from the wrong department and being labelled ineligible were racially motivated slights, but her own beliefs do not provide a factual basis sufficient to render those allegations plausible. Plaintiff only assumes that she received the errant phone call because she is an African American; she does not allege that the caller made reference to her race in any way. Nor does she refer to any portion of the call itself that led her to that conclusion. The same is only more true for her being labelled ineligible; there is nothing at all to suggest that her race played any part in the label.

**\*5** Jolly's bald assumptions are conclusory by definition, and cannot sufficiently support her allegation to overcome Excelsior's motion to dismiss. See *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) (noting that assertions that lack any factual foundation are conclusory and insufficient to defeat motion to dismiss). Furthermore, even if the Vermont board's conduct in having the allegedly wrong department head call plaintiff was racially motivated, the complaint provides no factual allegations to show any concerted effort on defendant's part to join in that allegedly discriminatory conduct.

Without any concrete factual allegations that point to race as a motivating factor in Excelsior's actions in informing various nursing boards that Jolly did not complete its RN program, her Count III § 1985 claim must be dismissed. *Pulizotto v. McMahon*, 406 F. Supp. 3d 277, 299-300 (S.D.N.Y. 2019) (dismissing § 1985 claim for inadequate factual matter tying race to acts taken in furtherance of alleged conspiracy).

Most fatal of all, however, is that Jolly cannot show that Excelsior's conduct at any point deprived her of a right or privilege. Plaintiff argues that she was denied the privilege of becoming an RN, and that is certainly true. But she cannot contend that she was entitled to that privilege when her complaint appends the Jersey board's disciplinary finding that she was never qualified to become an RN and that her licensure in that state was erroneous.

Moreover, at the risk of overplaying a theme, Jolly did not contest that finding and waived her right to a hearing on that score. Accordingly, plaintiff cannot allege any set of facts under which Excelsior denied her a privilege that she was never entitled to in the first place. Accordingly, her § 1985 claim must be dismissed, and given the futility of allowing amendment when plaintiff cannot hope to allege any deprivation of a privilege under these facts, that dismissal must be with prejudice.

Counts IV and VI of Jolly's complaint both allege discrimination in violation of Title VII. As Excelsior correctly notes, "the existence of an employer-employee relationship is a primary element of Title VII claims." *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006). Because there are no allegations that plaintiff was ever defendant's employee, her Title VII claims must both be dismissed.

*Id.* Moreover, because her allegations rely on the school-student dynamic, and not any employment relationship, no amendment to these claims would save them, and thus amendment would be futile. Accordingly, plaintiff's Title VII claims must be dismissed with prejudice.

As near as the Court can guess, Jolly's Count V attorney-client privilege claim appears to argue that Excelsior improperly disclosed information protected by that privilege. It must of course be noted at the outset that the privilege is not called school-student, and by extension it can be safely assumed that defendant did not owe a duty to protect plaintiff's information as her attorney. As a result, the question becomes whether plaintiff may state a claim against defendant for, she alleges, publishing materials which were protected by an attorney-client privilege to her detriment.

There can be no doubt that, even assuming that Excelsior did precisely that, New York does not recognize a tort against a third party to the attorney-client privilege who, having intruded on privileged information, then broadcasts that information. *Madden v. Creative Servs., Inc.*, 51 F.3d 11, 12-13 (2d Cir. 1995).

**\*6** It is possible that Pennsylvania law, the state of Jolly's residence, applies to this claim instead. The vast reaches of case law remain silent as to whether that state's law would recognize a tort for a third-party breach of attorney-client privilege. As a result, it would make little sense to create such a tort out of whole cloth without any supporting Pennsylvania authority in the face of New York's compelling reasons not to create such a tort resting on judicial restraint. *Madden v. Creative Servs., Inc.*, 646 N.E.2d 780, 783-85 (N.Y. 1995) (answering Second Circuit's certified question as to whether New York would recognize tort for intruder's breach of attorney-client privilege in the negative because possibility of unforeseen negative consequences loomed too large).

Accordingly, there is no available cause of action on these facts under either potentially applicable body of state common law, and Jolly's claim for breach of attorney-client privilege must be dismissed. Once again, the absence of a source of law sufficient to support plaintiff's claim would render futile any attempt to amend her complaint to salvage this claim. This claim must therefore also be dismissed with prejudice.

Finally, as to Count VII, Jolly has used some language in her complaint to suggest that she raises a claim of defamation

against Excelsior. In deference to her *pro se* status, plaintiff's complaint will be read to assert that claim.

Under New York law, defamation is "the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of h[er] in the minds of right-thinking persons, and to deprive h[er] of their friendly intercourse in society." [Foster v. Churchill, 665 N.E.2d 153, 157 (N.Y. 1996).](#)

Under Pennsylvania law, by contrast, a plaintiff must prove seven elements: (1) a defamatory communication; (2) published by the defendant; (3) the communication applies to the plaintiff; (4) the communication's recipient understands it to have defamatory meaning; (5) the recipient also understands it to be about the plaintiff; (6) special harm to the plaintiff; and (7) the abuse of a conditionally privileged occasion. [Weaver v. Lancaster Newspapers, Inc., 926 A.2d 899, 903 (Pa. 2007).](#) However, a defendant may rebut a claim of defamation by proving: (1) the defamatory communication was true; (2) the publication was privileged; or (3) the allegedly defamatory comment dealt with a matter of public concern. *Id.*

Suffice to say, under either state's defamation scheme, a defamation claim must be dismissed if it is clear from the face of the complaint that the allegedly defamatory statement was true. *See, e.g.*, [Budbri LP v. Wilmington Tr. FSB, 2012 WL 13015114, at *1 n.1 (E.D. Pa. Oct. 5, 2012)](#) (dismissing defamation claim under Pennsylvania law because allegedly defamatory comment was true based on face of complaint).

Jolly's allegations are essentially that Excelsior defamed her by falsely informing nursing boards across the nation that she had not completed its RN program, despite her telling varied nursing boards that the converse was true. However, at no point in the complaint does she allege that she actually graduated from defendant's RN program. To be sure, in places she argues that she is eligible to become an RN, and that she has completed an "RN Theory" program, but she also openly admits in her complaint that she never graduated from defendant's program. Comp. 31; *see* Comp. 60-61 (plaintiff noting that she "did not graduate" from defendant, but "did graduate from the [other] collegiate institutions").

In fact, then excerpt of Jolly's disciplinary hearing before the Jersey board, at which she, once again, accepted a five-year suspension of her LPN license for misrepresenting that she had graduated from Excelsior emphatically establishes that she did not, in fact, graduate. Comp. 102-04. Accordingly, plaintiff cannot hope to plausibly establish a claim of defamation when her complaint on several occasions establishes that the only harmful statement she alleges defendant made is uncontrovertibly true. Once again, she could not amend her complaint to cure this claim without flatly controverting several allegations in her initial complaint, and thus amending the complaint would be futile. As a result, plaintiff's defamation claim, to whatever extent she makes one, must be dismissed with prejudice.[4]

### IV. CONCLUSION

**\*7** In sum and substance, Jolly claims that she was improperly denied a chance to become an RN because Vermont's application system for the NCLEX-RN examination insufficiently accommodated applicants seeking to pursue alternative paths to become one other than graduating from a particular program. That may very well be true. But that does not change that her allegations against Excelsior amount to little more than its telling the truth that she never graduated from its version of that program. In the absence of any allegations more egregious than defendant's honestly defending its reputation, plaintiff's complaint must be dismissed.

Therefore, it is

ORDERED THAT

1. Defendant's motion to dismiss under [Rule 12(b)(6)](#) is GRANTED; and

2. Plaintiff's complaint is DISMISSED WITH PREJUDICE.

The Clerk of Court is directed to enter judgment accordingly and close the case.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2020 WL 3128535

## Footnotes

1 Pagination corresponds with CM/ECF. The facts are taken entirely from plaintiff's complaint and any and all documents attached to it, because for the purposes of a Rule 12(b)(6) motion, this Court must "accept as true the factual allegations of the complaint, and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff[.]" *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).

2 According to the Jersey board's administrative decision, attached as an exhibit to the complaint, plaintiff had erroneously received an RN license in that state and had worked for several months in that role despite being errantly licensed. Comp. at 102--04.

3 Plaintiff argues that because her claims against defendant were not dismissed when the case was transferred, defendant's motion is improper. Although she is correct that dismissal is one potential remedy for a complaint brought in an improper venue, and also that Magistrate Judge Slomsky dismissed only her claims against the boards and declined to dismiss her claims against defendant upon his *sua sponte* review, neither fact amounts to an endorsement of her remaining claims. Similarly, neither fact precludes defendant's Rule 12(b)(6) motion.

4 To whatever extent the complaint could be read to assert a general claim of civil conspiracy, that claim must also be dismissed. Neither New York nor Pennsylvania recognize an independent tort for civil conspiracy. *McCall v. Chesapeake Energy Corp.*, 509 F. App'x 62, 65 (2d Cir. 2013) (summary order) (noting that New York does not recognize a common law tort for civil conspiracy in the absence of an underlying tort for defendant to conspire to achieve); *Accurso v. Infra-Red Servs., Inc.*, 23 F. Supp. 3d 494, 512 (E.D. Pa. 2014) (holding same for Pennsylvania). Therefore, because none of plaintiff's other claims survive, there is nothing remaining for plaintiff to allege that defendant conspired to do, and any civil conspiracy claim must also be dismissed.

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 3606374
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Maketa S. JOLLY, Plaintiff
v.
EXCELSIOR COLLEGE, Defendant.

1:19-CV-1317
|
Signed 07/02/2020

**Attorneys and Law Firms**

MAKETA S. JOLLY, Plaintiff pro se, 42 Kingston Terrace, Aston, Pennsylvania 19014.

OF COUNSEL: LAURA B. JUFFA, ESQ., KAUFMAN BORGEEST & RYAN, LLP, Attorneys for defendant, 120 Broadway 14th Floor, New York, New York 10271.

### MEMORANDUM–DECISION and ORDER

DAVID N. HURD, United States District Judge

**\*1** On May 21, 2019, plaintiff Maketa Jolly ("Jolly" or "plaintiff") filed a 115-page complaint in the Eastern District of Pennsylvania alleging that three defendants, among them Excelsior College ("Excelsior" or "defendant") interfered with her ability to become a Registered Nurse ("RN") by disclosing to nursing boards across the country that she did not graduate from defendant's RN program. On May 24, 2019, United States Magistrate Judge Joel H. Slomsky streamlined the complaint such that only defendant remained, and only six claims remained against it: (I) disclosure of personal information; (II) violation of 18 U.S.C. § 242; (III) § 1985 conspiracy; (IV and VI) Title VII claims; and (V) breach of attorney-client privilege. In the same opinion, Magistrate Judge Slomsky found venue improper in the Eastern District of Pennsylvania and transferred the complaint to the Northern District of New York.

Upon the complaint's arrival here, Jolly encountered some difficulties in properly serving Excelsior. Nevertheless, on March 4, 2020, defendant executed a waiver of service. On April 14, 2020, defendant requested and received an extension of the deadline to either respond to plaintiff's claim or else to move to dismiss under Federal Rule of Civil Procedure ("Rule") 12. On May 11, 2020, defendant's last day to respond to the complaint or make a Rule 12 motion, defendant moved to dismiss plaintiff's complaint in its entirety under Rule 12(b)(6).

That motion was fully briefed by both parties, and granted on June 12, 2020 ("the June 12 decision"), dismissing the entirety of Jolly's complaint with prejudice. *Jolly v. Excelsior College*, 2020 WL 3128535 (N.D.N.Y. June 12, 2020). On June 15, 2020, Jolly promptly moved the Court to reconsider that decision under Local Rule of the Northern District of New York ("Local Rule") 7.1(g), to alter or amend the judgment under Rule 59(e), and to relieve her from the June 12 decision's final judgment under Rule 60(b) on June 15, 2020. That motion having been fully briefed, it will now be considered on the basis of the parties' submissions without oral argument.

A movant faces a "strict" standard in attempting to prevail on a motion for reconsideration. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). After all, these motions are not intended to allow a party a rehearing on the merits where they can levy facts and arguments that were available to them from the outset but that they did not advance. *See id.* As such, motions for reconsideration are an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Montblanc-Simplo GmbH v. Colibri Corp.*, 739 F. Supp. 2d 143, 147 (E.D.N.Y. 2010).

Thus, a prior ruling will only be reconsidered and vacated if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) reconsideration is necessary to remedy a clear error of law or to prevent manifest injustice. *Delaney v. Selsky*, 899 F. Supp. 923, 925 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983), *cert. denied*, 464 U.S. 864 (1983)).

**\*2** Jolly's motion for reconsideration marshals several attacks on the June 12 decision. First, plaintiff argues that Excelsior's motion to dismiss was untimely and therefore improperly granted. As noted above, defendant's deadline to respond to the complaint or move to dismiss it was extended until May 11, 2020, the date upon which defendant moved. The motion was therefore timely.

Second, Jolly argues that the June 12 decision improperly reconsidered arguments already found wanting by Magistrate Judge Slomsky, as evidenced by his declining to dismiss Excelsior from the case. But the June 12 decision already addressed that concern, and noted that Magistrate Judge Slomsky's review was not the same as deciding defendant's Rule 12 motion. *Jolly*, 2020 WL 3128535, at *3 n.3. Plaintiff's contention on this score is thus also meritless.

Third, Jolly contends that the Court failed to consider her civil rights claims, including an argued claim under 42 U.S.C. § 1983, in disposing of her complaint. At the outset, neither Magistrate Judge Slomsky nor Excelsior were able to divine a § 1983 claim from the complaint, and plaintiff failed to correct either of them. Of course, plaintiff is due some latitude as a *pro se* litigant, but if she can object to the Court's inability to read a viable § 1983 claim now, she just as easily could have, and by extension should have, objected to defendant's and Magistrate Judge Slomsky's similar readings of the complaint.

In any case, even bending over backwards to read a § 1983 claim into the complaint, that claim would have been dismissed with prejudice as plainly meritless in any event. Section 1983 requires Jolly to prove that "a person acting under color of any state statute, regulation, custom or usage deprived" her of a constitutional right, but nowhere in the complaint does she allege that Excelsior acted with any state authority. *Barrett v. Harwood*, 189 F.3d 297, 301 (2d Cir. 1999) (noting that § 1983 claims require state action by defendant).

Of course, Jolly could perhaps have amended the complaint to allege that Excelsior is a state school and thus invested with state authority.[1] But even then, plaintiff would have to bring claims not against defendant, but some individual employee of defendant acting in her individual capacity, or else her claim would similarly need to be dismissed because defendant is an arm of the state, and therefore protected from suit by the Eleventh Amendment. *See, e.g., Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990) (noting that state universities are "an integral part of the government of the State" and entitled to Eleventh Amendment immunity).

Perhaps plaintiff's § 1983 claims against defendant could thus be substituted as against Mary Lee Pollard, defendant's Dean of Nursing, in her individual capacity. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991) (holding that state officials may be sued in their individual capacity).

However, even going so far as to assume that Jolly could plead that Pollard was a state official acting in her individual capacity in denying her from becoming an RN, she still could not salvage a § 1983 claim. The closest her complaint comes to alleging a constitutional violation would be a procedural due process claim under the Fourteenth Amendment. *See Kapps v. Wing*, 404 F.3d 105, 112 (2d Cir. 2005). To stake out a viable due process claim, plaintiff would have to establish either a liberty or property interest protected by the Due Process Clause of the Fourteenth Amendment, and that existing state procedures designed to protect her liberty and property interest from unwarranted interruption are constitutionally inadequate. *See id.*

*3 Jolly might have been able to argue that her right to become an RN was a property interest worthy of due process protection, were it not required that a plaintiff asserting a due process claim demonstrate a legitimate entitlement to the property interest she seeks to protect. *See Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 447-48 (2d Cir. 1980) (evaluating plaintiff's legitimate entitlement to continued employment as dispositive of plaintiff's due process claim).

As discussed in the June 12 decision, Jolly included in her complaint a disciplinary hearing before the New Jersey Board of Nursing at which she did not contest that she was not entitled to become an RN, because she did not graduate from Excelsior's RN program. *Jolly*, 2020 WL 3128535, at *1-2. In other words, either her graduation from defendant's program was necessary to her becoming an RN, in which case plaintiff cannot demonstrate legitimate entitlement based on the face of the complaint, or else her graduation is not necessary, in which case defendant's telling boards of nursing that she did not graduate did not impact her interest in becoming an RN at all. In neither case can plaintiff hope to assemble a plausible § 1983 claim, and thus to whatever extent her complaint could be read to state one, the complaint was nevertheless properly dismissed.

Fourth and finally, Jolly argues that she was not given a fair opportunity to be heard, because some discovery matters were addressed before she could respond, and because she

was not permitted oral argument before the issuance of the June 12 decision. As to the first point, as Excelsior notes, United States Magistrate Judge Thérèse Wiley Dancks ruled on the discovery matters in plaintiff's favor. As to the second, oral argument on motions is a rare practice, and plaintiff was informed on June 9, 2020 that her motion would be taken on submitted papers only. Moreover, plaintiff filed a response in opposition to defendant's motion, which was duly considered. Accordingly, plaintiff was not denied a fair opportunity to be heard, and that argument cannot support reconsideration of the June 12 decision.

In summary, upon close review of Jolly's complaint and the June 12 decision, the decision must stand. None of plaintiff's claims rested upon a viable legal framework, except for her § 1985 and Title VII claims, the latter of which was clearly improper because of a lack of any employer-employee relationship between plaintiff and Excelsior to sustain it. As for plaintiff's § 1985 claim, the complaint only advanced a conclusory allegation of a racially-motivated conspiracy, with no plausible allegations of either racial animus or Excelsior's joining any conspiracy if one existed. Accordingly, plaintiff's motion for reconsideration under Local Rule 7.1(g) must be denied as meritless.

Similarly, Jolly's motions under Rules 59(e) and 60 must also be denied. As discussed above in resolving plaintiff's Local Rule 7.1(g) motion, she does not point to any "clear error of law" or "manifest injustice" that requires amendment to the judgment in this case under Rule 59(e). *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004). Nor do any of her arguments demonstrate a (1) mistake; (2) piece of newly discovered evidence; (3) fraud; (4) void portion of the judgment; or (5) satisfaction of the judgment to merit relief under Rule 60(b). Plaintiff's motion for reconsideration is thus entirely meritless and must be denied. Her only recourse now is on appeal.

*4 Therefore, it is

ORDERED THAT

Jolly's Motion for Reconsideration is DENIED.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2020 WL 3606374

## Footnotes

1     Although the Court will not take judicial notice of the fact to belabor the point against a *pro se* litigant, defendant is a private school, and thus plaintiff could not possibly have hoped to amend her complaint to allege state action. EXCELSIOR COLLEGE, ABOUT EXCELSIOR COLLEGE https://www.excelsior.edu/about/ (last visited July 1, 2020) (noting that defendant has been a private institution since April 1998).

2012 WL 213831
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court,
E.D. New York.

Mary LOPEZ, Plaintiff,
v.
JET BLUE AIRWAYS, Defendant.

No. 12–CV–0057.
|
Jan. 24, 2012.

**Attorneys and Law Firms**

Mary Lopez, Brooklyn, NY, pro se.

*ORDER*

[JOHN GLEESON](), District Judge.

**\*1** Plaintiff Mary Lopez, appearing *pro se,* files this *in forma pauperis* action asserting that Jet Blue Airways ("JetBlue") violated her rights by failing to provide adequate wheelchair assistance when she flew from New York to Puerto Rico on July 3, 2009. For the reasons discussed below, the complaint is dismissed with prejudice.

BACKGROUND

According to Lopez's complaint and attached exhibits, Lopez was scheduled to travel from New York, New York, to Aguadilla, Puerto Rico, on July 3, 2009 on a JetBlue flight. Compl. Ex. 1. While she was at the airport, JetBlue failed to timely provide her with a wheelchair, which caused Lopez physical and psychological injury. Compl. at 2. Reading her complaint broadly, Lopez asserts that JetBlue's actions violated her rights under the Air Carrier Access Act of 1986, [49 U.S.C. § 41705](), and its regulations, 14 C.F.R. § 382 .95.

DISCUSSION

Under [28 U.S.C. § 1915(e)(2)(B)](), a district court has an independent obligation to review a complaint filed *in forma pauperis* and must dismiss the complaint *sua sponte* if the court determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." When an *in forma pauperis* action is *res judicata,* it fails to state a claim upon which relief may be granted and thus [§ 1915(e)(2)(B)]() compels its dismissal. See [*Cieszkowska v. Gray Line New York,* 295 F.3d 204 (2d Cir.2002)](). Because I find that the instant action is barred by the doctrine of *res judicata,* I dismiss the complaint.

"Under the doctrine of *res judicata,* once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning the transaction, or series of connected transactions, out of which the [first] action arose." [*Cieszkowska,* 295 F.3d at 205]() (quoting [*Maharaj v. Bankamerica Corp.,* 128 F.3d 94, 97 (2d Cir.1997)]()) (internal quotation marks omitted) (alterations in original); *accord* [*Waldman v. Village of Kiryas Joel,* 207 F.3d 105, 108 (2d Cir.2000)](). In other words, later actions will be *res judicata* and subject to dismissal if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." [*Pike v. Freeman,* 266 F.3d 78, 91 (2d Cir.2001)]() (quoting [*Monahan v. N.Y.C. Dep't of Corr.,* 214 F.3d 275, 284–85 (2d Cir.2000)]()) (internal quotation marks omitted) (alterations in original).

The same facts Lopez alleges in the complaint before me form the basis for a prior complaint she filed against the same defendant, JetBlue, on April 6, 2010 in this Court. *See Lopez v. Jet Blue Airways,* 10 Civ. 1552, Dkt. Entry 1. She thus could have, and did, raise her Air Carrier Access Act claims in that complaint, and I dismissed that action on the merits for failure to state a claim upon which relief may be granted. See [*Lopez v. Jet Blue Airways,* No. 10 Civ. 1552, 2010 WL 3311428 (E.D.N.Y.2010)](), *aff'd,* [662 F.3d 593 (2d Cir.2011)](). The doctrine of *res judicata* thus squarely bars this action, and I dismiss the complaint pursuant to [§ 1915(e)(2)(B)]().

CONCLUSION

**\*2** For the reasons provided herein, the complaint is dismissed with prejudice. Lopez is cautioned not to file additional duplicative actions.

The Court certifies pursuant to [28 U.S.C. § 1915(a)(3)](#) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *[Coppedge v. United States,](#)* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

So ordered.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 213831

---

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.